UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS HODGETTS,   )
                  )
   Plaintiff,     )
                  )
v.                )
                  )   CASE NO.: 8:11-cv-00144-EAK-EAJ
CITY OF VENICE, FLORIDA,   )
                  )
   Defendant.     )
_____)

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUGMENT

This cause is before the Court on Defendant's Amended Motion for Summary Judgment (Doc. 43) and Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 57). For reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

## PROCEDURAL HISTORY

Plaintiff filed this action on February 2, 2009, against the City of Venice, Florida for violations of the Americans with Disabilities Act (ADA), 41 U.S.C. § 12111, and the Florida Civil Rights Act, §§ 760.01-760.11, *Fla. Stat.* (FCRA). Defendant filed a Motion to Dismiss Plaintiff's Complaint on April 1, 2009, and Plaintiff filed its response on April 2. The case was assigned to Judge Charlene E. Honeywell on December 9, 2009, she referred Defendant's Motion to Dismiss to Magistrate Judge Sheri Polster Chappell on January 7, 2010. Magistrate Judge Chappell recommended that Defendant's Motion to Dismiss should be granted, that Plaintiff's Complaint should be dismissed without prejudice, and that thirty days be allowed to cure defects.

On February 25, 2010, Plaintiff filed his Amended Complaint which includes eight counts of misconduct by Defendant relating to his employment. These counts are: (1) harassment in

violation of the ADA, (2) discrimination in violation of the ADA, (3) failure to make reasonable accommodations under the ADA, (4) retaliation in violation of the ADA, (5) harassment in violation of the FCRA, (6) discrimination in violation of the FCRA, (7) failure to make reasonable accommodations under the FCRA, (8) and retaliation in violation of the FCRA. The Defendant filed a new Motion to Dismiss on March 12, 2010, and Plaintiff filed its response on March 22, 2010.

On April 20, 2010, mediation before Christopher Shulman, Esq. resulted in an impasse. The Defendant filed a Motion for Summary Judgment on July 1, 2010. Defendant then withdrew its Motion for Summary Judgment on July 13 and filed an Amended Motion for Summary Judgment on August 31. Defendant's Motion to Dismiss, previously filed on March 12, was denied by Judge Honeywell on September 3. Plaintiff filed its Memorandum in Opposition to Defendant's Motion for Summary Judgment on September 28. Defendant requested leave to file a reply to Plaintiff's response on October 15 but it was denied on October 18, 2010.

Plaintiff filed a Motion in Limine on September 7 and Defendant filed its response on September 30. Defendant filed its own Motion in Limine on October 3 and Plaintiff filed its response on October 6, 2010.

On October 15, 2010 Plaintiff gave Notice of *Filing Affidavit of James M. Thompson*. Defendant filed a Motion to Strike *Filing Affidavit of James M. Thompson* which was granted on November 3 by Magistrate Judge Chappell.

On January 14, 2011, Judge Honeywell ordered that the case be transferred to the Tampa Division of the Middle District of Florida.

## STATEMENT OF FACTS

The following facts are submitted by the parties, in support and/or in opposition to, their respective motions for summary judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motion.

Plaintiff, Tom Hodgetts, is a former senior records clerk with the Venice Police Department. (Hodgetts Aff. ¶1.) The Defendant, the City of Venice, Florida. The Plaintiff worked the Defendant for between 1995 and 2008. (Hodgetts Dep. 53:10.) Prior to that, he was an officer with the Philadelphia Police Department where he worked until 1986 when he injured himself during a training exercise, resulting in paralysis, which lasted for a year, and quadrapesis from that point forward. (Hodgetts Aff. ¶ 2.) Mr. Hodgetts was employed as a records clerk from 1996 until he was terminated in May of 2008. (Hodgetts Dep. 56:2-3, 155:13-16.) Prior to termination, Mr. Hodgetts took sick leave and a medical leave of absence beginning in July of 2007 and ending in May of 2008 with his termination immediately after his FMLA expired. (Id. at 137:19-25.) Mr. Hodgetts did not attend his Pre-Determination Hearing which was held prior to his termination. (Id. at 156:14-18.) On February 28, 2008, he had begun the process of retirement and finalized his application in March of that year. (Id. at 138:8-9, 23-25.) As a result of his termination, Mr. Hodgetts did not receive full medical benefits until his status was changed to reflect his retirement in August of 2008. (Id. at 154: 4-8, 155: 3-6.)

As a result of his injuries sustained while working for the Philadelphia Police Department, Mr. Hodgetts has trouble walking as well as difficulty using his hands. (Id. at 28:11-20.) To aid himself in moving around, Mr. Hodgetts uses a cane and knee brace. (Id. at 134:14-18; Hodgetts Aff. ¶ 3.) These difficulties were known to other employees at the records department including Mr. Hodgetts's supervisor Teri Krabill. (Krabill Dep. 18:16-23.) During his time at the records

department, Mr. Hodgetts received assistance from other employees with copying and filing, as well as exemption from certain duties normally associated with records clerks. (*Id.* at 19:17-25.)

During his employment as a records clerk, Mr. Hodgetts filed several complaints with the EEOC pertaining to his physical disability. His first complaint followed the hiring of Rick Napoli as Records Supervisor in 2000. Both Hodgetts and Napoli applied for the position and the EEOC investigation found that Napoli was given the position despite Hodgetts being the more qualified candidate. (*Id.* at 66:13-18.) The City settled the suit for $10,000.00. (*Id.* at 66:22.) In 2004, Hodgetts filed another EEOC grievance, as well as a union complaint, against Mr. Napoli due to statements made by Mr. Napoli, which Mr. Hodgetts considered derogatory. (*Id.* at 68:21-69:8.) This complaint was also disposed of, this time without payment. (Napoli Dep. 22:20-21.)

Mr. Hodgetts filed a final EEOC complaint alleging retaliation in August of 2008 after he was terminated. (Hodgetts Dep. 137:15-25.) The EEOC initially issued a Right to Sue letter in November but retracted it in February of 2009 to perform further investigation. (Def.'s Mot. Summ. J. Ex. 30 & 31.) After this investigation, the EEOC issued a Letter of Determination in May of 2009, which makes no finding regarding Mr. Hodgetts's harassment and high workload claims but does find merit to the retaliation claim. (Hodgetts Aff. Ex. 15.)

Napoli was replaced as supervisor by Teri Krabill in 2005. (Krabill Dep. 15:12-14.) In November of 2005, Ms. Krabill evaluated Mr. Hodgetts's performance, rating him "Excellent" in four categories, "Fully Satisfactory" in thirteen, and "Satisfactory" in two, with no "Unsatisfactory" ratings in any category. (Hodgetts Aff. Ex. 1) In April or May of 2006, Teri Wulke, another records clerk, claims to have overheard a conversation between Ms. Krabill and Mr. Napoli where they discussed means to overwork Mr. Hodgetts or otherwise cause him to quit. (Wulke Dep. 44:20-45:10.) The conversation is alleged to have occurred after Krabill learned of

Hodgetts's previous EEOC claims against the City and Mr. Napoli. (*Id.* at 44:23-25.) Upon returning home, Ms. Wulke claims to have told her mother what she heard and wrote some notes in a notebook which she no longer possesses. (*Id.* at 49:14-23.) The next day, Ms. Wulke claims to have noticed an increase in the workload assigned to Mr. Hodgetts, (*id.* at 59:22-25), and changes in policy that had the effect of making his job more difficult, (*id.* at 61:8-15). She made one minor attempt to inform the Chief of Police about the conversation between Ms. Krabill and Mr. Napoli but, otherwise, did not mention the meeting to Mr. Hodgetts or anyone at the Records Department until after her lay-off. (*Id.* at 52:13-24.)

Mr. Hodgetts's 2006 evaluation indicates a significant departure from his 2005 evaluation: Fully Satisfactory in 2 categories, Satisfactory in 15, and Unsatisfactory in 2 with no categories marked as Excellent. (Hodgetts Aff. Ex. 3.) Mr. Hodgetts complained to the Chief of Police about this evaluation, specifically the two "Unsatisfactory" ratings that were issued without a prior conference as was the policy. (Hodgetts at 76:14-77:5.) He also complained to Ms. Krabill about the increased workload and what he perceived to be inefficient or ineffective policies. (Hodgetts Aff. ¶ 38.) Ms. Krabill then officially redistributed work assignments which added several new duties to Mr. Hodgetts including some that encompassed filing or copying. (*Id.* ¶¶ 46-47.) At the same time there was an alleged directive forbidding employees from helping each other with their work without permission from a supervisor. (Wulke at 39:22-40:4.) However, at no point did Mr. Hodgitts complain to Ms. Krabill or any other supervisor that he could not perform the work specifically because of his disability. (*See, e.g.*, Hodgetts at 91:19-21.)

In June of 2007, Ms. Wulke typed up a letter detailing the conversation she claims to have overheard between Ms. Krabill and Mr. Napoli and delivered it to Mr. Hodgetts. (*Id.* at 106:10-12.) Mr. Hodgetts then had Ms. Wulke sign, date, and notarize the letter to use in a union

complaint and EEOC grievance. (*Id.* at 106:16-17.) Ms. Wulke drafted and delivered the letter a month and a half after she was laid off from the Records Department for budget reasons. (Wulke Dep. 53:4-10.) After turning over the letter to his union representative and filing a grievance which initiated an Internal Affairs investigation, Mr. Hodgetts left for a short vacation. (Hodgetts Aff. ¶¶54-55.) The Internal Affairs investigation resulted in exoneration for Ms. Krabill and recommended no action be taken. (Def. Mot. Summ. J. Ex. 8.)

Upon returning, Mr. Hodgetts received his 2007 evaluation from Ms. Krabill where he received Fully Satisfactory in one category, Satisfactory in five, and Unsatisfactory in thirteen, with no Excellent ratings in any category. (Hodgetts Aff. Ex. 13.) Notably, this performance evaluation stated that Mr. Hodgetts was deemed Unsatisfactory for failing to perform duties not assigned to him (South County Run) or for performing duties poorly or slowly that were previously were not assigned to him due in part to his disability (such as copying and filing). (*Id.* ¶¶ 58-63.) As a result of this evaluation, Mr. Hodgetts was placed on a "Performance Improvement Plan" (PIP) and it was indicated to him that if he received one more Unsatisfactory he would be fired. (*Id.* ¶ 67.) Following the 2007 evaluation, Mr. Hodgetts began a medical leave of absence resulting from depression, anxiety, and related health issues. (*See* Hodgetts Dep. at 136:1-20.) The Defendant submits that Mr. Hodgetts's falling performance ratings were justified and fairly reflect his insubordination and complaints from members of the public. (Def. Mot. Summ. J. at 13-14.) Mr. Hodgetts filed an EEOC retaliation complaint in October but it was dismissed in November of 2008 because it was not timely filed. (*Id.* Ex. 28 & 29.)

During his employment, Mr. Hodgetts never explicitly requested special accommodations as a result of his disability with two notable exceptions. (*See, e.g.*, Hodgetts Dep. 127:22-25.) The first exception occurred in 2003 when he requested an intercom system to allow him to deal

with people at the front window without standing up and walking there from his desk in the back of the office. (*Id.* at 68:3-6.) The City never fulfilled his request so Mr. Hodgetts purchased an intercom system himself and was reimbursed. (*Id.*) The second exception occurred prior to that when Mr. Hodgetts requested a chair be placed near the copy machine, which he received after producing a doctor's note. (*Id.* at 67:12-18.) Defendant alleges that a host of accommodations were made for Mr. Hodgetts including relocating the fax machine and paper shredder near his desk, moving his desk to the front of the office, closer to the front window, and assigning duties to other clerks which were difficult for Mr. Hodgetts. (Def. Mot. Summ. J. Ex. 38.)

## STANDARD OF REVIEW

Summary judgment is properly granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) In deciding summary judgment, the court must consider all evidence in the light most favorable to the nonmoving party, *Sweat v Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983), and must draw all reasonable inferences in favor of the nonmoving party, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating and absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). This burden may be discharged if the moving party can show an absence of evidence to support the nonmoving party's case. *Id.* at 323, 325. If the moving party meets this burden, the nonmoving party must then designate specific facts demonstrating a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Issues of fact are "genuine" only if a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those facts that will affect the outcome of the trial. *Id.* at 248; *Hickson Corp. v. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). The weighing of evidence and determinations of credibility are the functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

### I. FCRA Claims Construed in Accordance with the ADA

Defendant correctly notes that disability discrimination claims under the FCRA are analyzed using the same framework as disability discrimination claims under the ADA. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (citing *D'Angelo v. ConAgra Foods Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)). Thus this Court properly considers both ADA and FRCA claims simultaneously and does not differentiate between ADA and FCRA claims during analysis. *Id.*

### II. Plaintiff's Charges Were Timely Filed & Plaintiff Exhausted Administrative Remedies

Defendant argues, primarily with respect to Plaintiff's claims for retaliation, that Plaintiff's charges were not timely filed and so summary judgment should be granted. (*See* Def. Mot. Summ. J. 23-24) However, Plaintiff is alleging a continuous series of discriminatory acts, starting in 2006 with the alleged meeting between Ms. Krabill and Mr. Napoli and continuing through Plaintiffs 2007 EEOC charges. (Pl.'s Mem. Opp. Summ. J. 25). Because a jury could reasonably find that the alleged acts by Defendant were not separate, discrete acts, all of the

conduct is actionable, even though portions may fall outside of the 300 day (or 365 day) window. *See McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008). Thus none of Plaintiff's claims are barred for reasons of time.

In addition to contesting individually Plaintiff's claims of harassment, discrimination, failure to make accommodations, and retaliation, Defendant argues that Plaintiff failed to satisfy administrative prerequisites for filing his harassment, discrimination, and accommodation claims. (Def. Mot. Summ. J. 24.) Before a suit can be filed under the ADA, a plaintiff must file a charge with the EEOC within 300 days of the alleged violation and the EEOC must terminate is investigation which starts a 90 day clock for filing the suit. *Maynard v Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262-63 (11th Cir. 2001). Any allegations of discrimination under the ADA must be related to, or reasonably grow out of, the substance of the plaintiff's EEOC complaint. *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004) (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). Defendant argues that Plaintiff's 2007 EEOC complaint was for discrimination based on retaliation, not based on disability. (Def. Mot. Summ. J. 25.) Furthermore, Defendant argues that to the extent Plaintiff's EEOC complaint includes allegations of harassment and discrimination, they only exist in relation to his claim for retaliation and are not "stand-alone" claims. (*Id.*)

Plaintiff responds by correctly noting that a plaintiff may file suit for things which were or reasonably should have been part of the administrative investigation. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). In making this determination, the Court looks beyond the four corners of the complaint to include the entire scope of the administrative investigation. *Gomes v. AVCO Corp.*, 964 F2d 1330, 1334 (2d Cir. 1992). The same underlying facts and occurrences that the EEOC would have examined while investigating Plaintiff's 2007 complaint for retaliation

make up the basis for his judicial claims of harassment, discrimination, and failure to make accommodations. Indeed, Ms. Wulke's letter and testimony provide a substantial portion of the evidence for all of the afore mentioned claims in addition to Mr. Hodgetts's claim for retaliation. Thus, Plaintiff has satisfied his administrative prerequisites and Defendant's Motion for Summary Judgment based on failure to satisfy administrative prerequisites is **DENIED** with regard to Counts I-III and V-VII.

### III. Counts I & V: ADA & FCRA Harassment/Hostile Work Environment

To establish a *prima facie* case for hostile work environment, a plaintiff must prove: (1) he belongs to a protected class, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive work environment, and (5) the employer is responsible for such environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Defendant argues that the only statements on record which could be construed as offensive were the comments allegedly made by Ms. Krabill to Mr. Napoli regarding Mr. Hodgetts raising his grandson and that these comments were never made directly to Mr. Hodgetts. (Def. Mot. Summ. J. 16.) Defendant goes on to argue that any conduct which could be considered harassing was not of the severity or frequency, nor did it impact the employee's work performance sufficiently, to support a claim for hostile work environment. (*Id.*) To sustain a claim for hostile work environment or harassment, there must be evidence of more than "merely offensive" utterances, such that a reasonable person would find the work environment hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This effectively establishes the Defendant's

position that there was an absence of evidence on the record to support Plaintiff's claim for hostile work environment.

Having met its initial burden, the burden shifts from the Defendant to the Plaintiff to point to a disputed issue of material fact. Plaintiff does not respond, directly or indirectly, to Defendant's Motion for Summary Judgment with regard to Plaintiff's hostile work environment and harassment claim. Thus Plaintiff has not met his burden to oppose summary judgment by pointing to evidence on record to support his claim and so Defendant's Motion for Summary Judgment is **GRANTED** with regard to Counts I and V as to Plaintiff's hostile work environment and harassment claim.

### IV. Counts II & VI: ADA & FCRA Discrimination

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination, a plaintiff must establish that he: (1) is disabled, (2) is a qualified individual, (3) and was subjected to unlawful discrimination because of his disability. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).

Defendant essentially argues that Plaintiff was not subjected to discrimination because he has not alleged, nor produced evidence that shows, that the terms, conditions, and privileges of employment were adversely affected by his supervisors actions. (Def. Mot. Summ. J. at 19.) Defendant argues that Mr. Hodgetts was not demoted, stripped of benefits, deprived of seniority, denied promotion, or otherwise subjected to adverse employment actions and that Plaintiff's administrative termination did not impact his receipt of retirement benefits. (*Id.*) Defendant goes on to contend that, if Plaintiff's administrative termination could be regarded as adversely affecting the terms, conditions, or privileges of his employment, the City was justified in

terminating Mr. Hodgetts in the manner it did, and it did so for a legitimate, nondiscriminatory reason. (*Id.* at 19-20)

A violation of the ADA can be shown either through direct evidence, which immediately precludes summary judgment, *Jones v Bessemer Carraway, Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998), or through circumstantial evidence using the *McDonnell Douglas* framework, *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999). Direct evidence is that evidence which, if believed, would directly demonstrate a violation without inference or presumption. *Bessemer Carraway*, 151 F.3d at 1323 n.11 (noting that the 11th Circuit has severely limited what statements constitute direct evidence) (citing *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997)).

Plaintiff, in arguing that discrimination can be established by direct evidence, relies heavily on Ms. Wulke's letter and deposition where she alleges a conspiracy between Ms. Krabill and Mr. Napoli to drive Mr. Hodgetts to quit. (Pl.'s Mem. Opp. Summ. J. 18.) Some of the statements which Ms. Wulke allege include suggestions to assign jobs to Mr. Hodgetts which would be hard because of his disability (assisting people at the front window for example). (*Id.*)

Without weighing the credibility of Ms. Wulke's letter and testimony, and assuming that they are true, they do not sufficiently establish direct evidence of discrimination. As Plaintiff correctly notes, the ADA creates a "but for" liability standard which simply requires that a plaintiff show that his disability was a determinative factor in the employer's decision. *Farley*, 197 F.3d at 1334. However, the reference to Mr. Hodgetts's disability was not set forth as a reason to drive him out but as means to accomplish the purpose. (*See* Wulke Dep. Ex. 1.)

Furthermore, assuming that a reasonable jury could determine that the statements allegedly made by Ms. Krabill and Mr. Napoli indicated discrimination because of Mr. Hodgetts's

disability, the statements do not rise to the level of direct evidence. *See Burrell v. Board of Trustees*, 125 F.3d 1390, 1393 (11th Cir. 1997) (noting that evidence which suggests, but does not entirely prove, discriminatory motive is by definition circumstantial and not direct). The evidence in Ms. Wulke's letter certainly suggests, and a reasonable jury could infer, a discriminatory motive but because an inference is required it cannot be said to be direct. *Id.*

Failing the direct evidence test, discrimination can still be shown based on circumstantial evidence. As already mentioned, the statements which Ms. Wulke alleges in her letter and deposition are fairly strong circumstantial evidence of discriminatory motive. *See Burrell*, 125 F.3d at 1393. Furthermore, circumstantial evidence can be established using *McDonnell Douglas* analysis. To satisfy the test, a plaintiff must show that: (1) they belong to a protected class, (2) they were subjected to an adverse employment action, (3) similarly situated individuals outside of plaintiff's protected class were treated more favorably, and (4) they were qualified for the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Elements one and four are not seriously in dispute: Plaintiff is plainly disabled, thus he is part of a protected class, and previous performance evaluations easily allow a jury to conclude he is qualified.

With regard to prong three, there is evidence on the record to support the conclusion that other non-disabled, similarly situated employees were treated more favorably than Plaintiff. To show that two employees are similarly situated, the Plaintiff must simply show that he was subject to the same employment policies, the title or relative rank of the two employees is immaterial. *Latham v. Department of Children and Youth Serv.*, 172 F.3d 786, 793 (11th Cir. 1999). By that definition, Mr. Hodgetts is similarly situated with regard to Ms. Wulke, Ms. Lehman, and likely even Ms. Krabill. There is sufficient evidence on the record for a reasonable jury to conclude that Mr. Hodgetts had a substantially higher workload and was treated more

harshly than other Records Clerks who did not suffer disabilities. (*See, e.g.*, Wulke Dep. 61:8-15.) Thus prong three of *McDonnell Douglas* is satisfied.

The real contention in this analysis is whether Plaintiff was subjected to adverse employment actions. Plaintiff seems to contend that the increased workload and poor performance evaluations, combined with the PIP and threat of termination, constitutes adverse employment action. (Pla. Opp. 20-21) Defendant by contrast argues that the only possible "adverse" employment action was Mr. Hodgetts's administrative termination but that this did not sufficiently impact his terms, conditions, or privileges of employment. (Def. Mot. Summ. J. 19.) At the very least this establishes a genuine issue of material fact: whether Mr. Hodgetts's suffered adverse employment actions. There is sufficient evidence that a reasonable jury could reach either conclusion thus summary judgment for Defendant is improper and is **DENIED** with respect to Counts II and VI on this issue.

### V. Counts III & VII: ADA & FCRA Failure to Make Reasonable Accommodations

Before an employer is required to provide reasonable accommodations to a disabled employee, the employer must know of the employee's disability. *Miller v. National Cas. Co.*, 61 F.3d 627, 629 (8th Cir. 1995); *see also Fussell v. Ga Ports Auth.*, 906 F.Supp. 1591, 1569 (S.D. Ga. 1995). If the employee is not obviously disabled, then the burden is on him to alert the employer of the disability, thus triggering the requirement to provide reasonable accommodations. *Reed v. LePage Bakeries Inc.*, 244 F.3d 254, 260-61 (1st Cir. 2001). Such a request must be direct and specific so as to give notice to the employer that accommodations are necessary. *Id.* (citing *Wynne v. Tufts Univ.*, 976 F.2d 791, 795 (1st Cir. 1992)).

Defendant appears to argue that Plaintiff is not obviously disabled and, thus, it was required that he provide notice to his employers of his disability and specifically request

accommodations. (*See* Def. Mot. Summ. J. 20.) Defendant goes on to argue that Mr. Hodgetts did not ask for accommodations, and to the extent that he did request accommodations they were never explicitly denied. (*Id.* at 21.) The City argues that any complaints Mr. Hodgetts made regarding his work were related to procedural issues, not issues stemming from his disability. (*Id.*) Finally, Defendant argues that Ms. Krabill went above and beyond by attempting to "divine" Mr. Hodgetts's needs and accommodate them by not requiring him to perform the South County Run, reorganizing the office, and providing him with assistance with filing and copying. (*Id.*)

Plaintiff argues that the City violated the ADA not by failing to provide reasonable accommodations but rather by providing them then revoking them at a later time. (Pl.'s Mem. Opp'n Summ. J. 21.) Plaintiff cites the redistribution of work by Ms. Krabill in 2007 and the directive that employees not assist one another unless given specific permission to do so as evidence of accommodations being revoked. (*Id.*) Furthermore, Plaintiff argues that by rating Mr. Hodgetts "Unsatisfactory" on his 2007 evaluation in part because of his inability to do filing, copying, and the South County Run, Defendant has effectively revoked previously granted accommodations. (*Id.*) This evaluation is made more significant by the fact that Mr. Hodgetts would be subject to further discipline, including possibly termination, if he received further "Unsatisfactory" ratings. (*Id.* at 21-22.) Finally, Plaintiff argues that Ms. Krabill knew Mr. Hodgetts was disabled and so he was not required to provide notice of his disability. (*Id.* (citing Krabill at 18:16-23))

At the very least, Plaintiff raises a genuine issue of material fact with regard to whether Mr. Hodgetts should be considered obviously disabled and, thus, whether he was required to provide notice of his disability and specifically request accommodations. (*Compare* Def. Mot.

Summ. J. 20 *with* Pl.'s Mem. Opp'n Summ. J. 22.) From the record it appears that Mr. Hodgetts had obvious difficulty walking, requiring him to wear a knee brace and use a cane for even short distances. (Hodgetts Aff. ¶3.) Furthermore, Plaintiff points to sufficient evidence on record that indicates Ms. Krabill knew about Mr. Hodgetts's disability. (Pl.'s Mem. Opp'n Summ. J. 22.) Finally, Plaintiff has indicated record evidence such that a reasonable jury could find that the City had removed or intended to remove previously granted accommodations. It cannot reasonably be argued that accommodations were being provided while allowing those accommodations to negatively impact Mr. Hodgetts's performance evaluations.

Thus, because there is a genuine issue of material fact as to whether Plaintiff is obviously disabled, and thus not required to specifically request accommodations, and because Plaintiff has indicated sufficient evidence on record to show Defendant had removed previous accommodations, Defendant's Motion for Summary Judgment is **DENIED** with regard to Counts III and VII.

## VI. Counts IV & VIII: ADA & FCRA Retaliation

To establish a *prima facie* claim for retaliation under the ADA, a plaintiff must show that he (1) "engaged in statutorily protected conduct, (2) he suffered adverse action, and (3) there is a causal connection between the protected conduct and the adverse action." *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1030, 1314 (11th Cir. 2001). In the context of a retaliation claim, adverse action is broader than with respect to simple discrimination claims, encompassing any action by an employer which has a materially adverse effect on the plaintiff, it does not have to be specifically workplace related. *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). An employer's actions are considered "materially adverse" if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53, 68 (2006). A causal connection can be shown where there is a "close temporal proximity" between the employer learning of the protected conduct and the adverse action. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). This requires, at a minimum, that the employer knew of the plaintiff's protected conduct. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Defendant argues that based on when Plaintiff's EEOC claim for retaliation was filed, there is no adverse action that falls within the prior 300 days, essentially that Plaintiff waited too long to bring his claim.[1] (Def. Mot. Summ. J. 23.) Plaintiff filed an EEOC charge on October 10, 2007 for retaliation, thus Defendant argues some adverse action must have occurred after December 14, 2006[2]. Defendant further argues that the administrative termination of Mr. Hodgetts was not an adverse action because the City followed procedure in terminating him after his FMLA expired. (*Id.* at 23-24.)

Plaintiff begins by correctly noting that direct evidence of retaliation is sufficient to preclude summary judgment for the Defendant. (Pl.'s Mem. Opp'n Summ. J. 22.) The same standard presented earlier for what constitutes direct evidence applies here: evidence which, if believed, shows retaliation without inference. *See Wright v Southland Corp.* 187 F.3d 1287,1306 (11th Cir. 1999). Plaintiff once again refers to Ms. Wulke's letter and deposition as direct evidence of retaliation. (Pl.'s Mem. Opp'n Summ. J. 22.) As opposed to Plaintiff's Counts II and VI, this evidence is sufficient to show discrimination without inference if it is believed, which it is for the purpose of summary judgment. (Wulke Dep. Ex. 1.)

---

[1] On pages 21-25 of Def. MSJ there are markings which appear to be corrections made on the original document. The Court assumes that these were corrections made by Defendant's lawyers prior to filing and will base its decision on the handwritten information to the extent that it appears to correct the original writing.

[2] Noting that FCRA allows for retaliation claims within 365 days of adverse actions, actions occurring after October 10, 2006 may be considered.

Plaintiff further argues that taken on its own, Mr. Hodgetts's 2007 evaluation following the internal affairs investigations regarding Ms. Wulke's letter is sufficient to show retaliation. Plaintiff engaged in protected conduct by contacting his union representative and initiating an internal affairs investigation in July of 2007. (Pl.'s Mem. Opp'n Summ. J. 24.) Within days of filing the complaint, Mr. Hodgetts received an extremely poor evaluation and was placed on a PIP with the threat of further punishment if future evaluations were poor. The close temporal relationship between initiating the investigation into Ms. Krabill and Ms. Krabill's evaluation of Mr. Hodgetts, combined with the fact that Ms. Krabill did not follow procedure in issuing the evaluation (prior notification is required for and Unsatisfactory ratings) satisfies the second and third prong for retaliation. Furthermore, because Plaintiff developed severe depression following the actions by Defendant, those actions can be considered "materially adverse." *See Burlington*, 548 U.S. at 68; *see also Crawford*, 529 F.3d at 973. This series of events occurred well within the 300 days prior to Plaintiff filing his EEOC complaint for retaliation in October of 2007. Finally, there can be no serious contention that Ms. Krabill did not know of Plaintiff's protected conduct as the complaint which constituted the protected conduct was directed against her.

This series of events represents just a single possible source of a retaliation claim of which there a several other possible instances on record. However, this alone is sufficient to preclude summary judgment. For that reason, Defendant's Motion for Summary Judgment is **DENIED** with respect to counts four and eight. Accordingly, it is:

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 48) be **GRANTED** in part and **DENIED** in part, as stated in this opinion.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of June, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All parties and counsels of record